**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

ALISON ASSANAH-CARROLL   :
2601 Madison Ave, PH7     :
Baltimore, MD 21217,     :
             :
On Her Own Behalf and on Behalf  :
of All Others Similarly Situated   :
             :  Civil Action No.
     Plaintiff,    :
v.            :
             :
LAW OFFICES OF EDWARD J. MAHER, P.C.:
1426 E. Joppa Road      :
Towson, MD 21286      :
   s/o        :
Edward J. Maher, Resident Agent  :
723 S. Charles Street, Suite 101   :
Baltimore, MD 21230     :
             :
and          :
             :
EDWARD J. MAHER     :
1426 E. Joppa Road      :
Towson, MD 21286      :
             :
and          :
             :
E.T.G. ASSOCIATES '94, LP   :
Suite 5         :
832 Germantown Pike     :
Plymouth Meeting, PA 19462   :
   s/o        :
The Corporation Trust, Inc.    :
2405 York Road       :
Suite 201        :
Timonium, MD 21093-2264   :
             :
and          :
             :
ROIZMAN DEVELOPMENT, INC.  :
Suite 5         :
832 Germantown Pike     :
Plymouth Meeting, PA 19462   :

```
s/o                              :
Robert C. Douglas                :
6225 Smith Ave.                  :
Baltimore, MD 21209              :
                                 :
        Defendants.              :
```

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Alison Assanah-Carroll, on her own behalf and on behalf of a class of similarly situated persons, by and through her attorneys Joseph S. Mack of the Law Offices of Joseph S. Mack and Ingmar Goldson of the Goldson Law Office, LLC, sues Defendants Law Offices of Edward J. Maher, P.C. ("Law Office"), Edward J. Maher ("Maher"), E.T.G. Associates '94, LP ("E.T.G.") and Roizman Development, Inc. ("Roizman"), and states as follows:

## INTRODUCTION

1.      On August 1, 2018, Baltimore City Council Bill 18-0185 went into effect, which requires that all Baltimore City rental dwellings be licensed. In order to obtain a license, the rental property must be registered and must be inspected for compliance with the housing code.  Art. 13, §§ 5-6, 5-7 of the Baltimore City Code.  In order to protect renters from unsafe conditions and ensure that landlords comply with the licensing requirement, the Baltimore City Council included a clear consequence for unlicensed residential rental property: Under Article 13, § 5-4 of the Baltimore City Code, "no person may… Charge, accept, retain, or seek to collect any rental payment or other compensation for providing to another the occupancy of all or any part of any rental dwelling unless the person was licensed under this subtitle at both the time of offering to provide and the time of providing this occupancy."

2.      This case involves a landlord who, through its horrible maintenance practices, allowed its property to fall into disrepair, which caused its license to rent that property to lapse for nearly a year, and its debt collection lawyer who aggressively pursued payments for rent that Defendants were prohibited from collecting during the period where the property was unlicensed.

3.      As a result, the residents of the 146 units in the property were illegally deceived into paying rent that Defendants were prohibited from collecting while the property had numerous unsafe conditions and housing code violations.

4.      As set forth in this Complaint, Defendants Law Office and Maher's actions violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and Defendants E.T.G. and Roizman are liable to the class under Maryland's Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Comm. § 14-201 *et seq.*, Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. § 13-101 *et seq.*, and the common law.

## PARTIES

5.      Defendant Law Office is a Maryland professional corporation with its principal place of business in Baltimore County, Maryland.  Defendant Law Office is engaged in the daily business of providing legal services and debt collection services for Maryland landlords, filing hundreds of landlord/tenant collection actions each year.

6.      Defendant Maher is a Maryland attorney who founded Defendant Law Office. He has significant experience practicing in the area of landlord/tenant law on behalf of landlords, and is engaged in the daily business of providing debt collection services for Maryland landlords. Throughout the timeframe of this Complaint, Defendant Maher was

personally involved in the planning, drafting, and execution of the collection efforts by Defendant Law Office at issue in this case.

7.      Defendant E.T.G. is a Pennsylvania limited partnership.  Defendant E.T.G. is the owner of the Renaissance Plaza Apartments, located at 2601 Madison Ave, Baltimore, MD 21217 (the "Property").

8.      Defendant Roizman is a Pennsylvania corporation and the general partner of Defendant E.T.G.  Together with Defendant E.T.G., Defendant Roizman manages the Property.

9.      Named Plaintiff Alison Assanah-Carroll is a resident of Maryland, residing in the Property in Baltimore City since April of 2019, and is a "consumer" as defined by the FDCPA.

## JURISDICTION AND VENUE

10.      This court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

11.      Venue is proper in this District because, under 28 U.S.C. § 1391(b), a substantial part of the events giving rise to claims herein occurred within this District and the Defendants  systematically and continually transact business in this District.

## FACTS

### Common Facts

12.      Defendants E.T.G and Roizman acquired the Property approximately 25 years ago.  Over the years, Defendants E.T.G. and Roizman allowed the Property to develop numerous problems, including recurring issues with non-working elevators, issues with

water pressure and plumbing, and rodent infestations, as well as various additional issues in numerous individual apartments.

13.     Whether out of that same general neglect, problems passing inspection, or intentional avoidance because they knew that the Property would fail the inspection required for a license, Defendants E.T.G and Roizman allowed their license to rent the Property to expire on August 15, 2019.

14.     Upon information and belief, all Defendants were immediately aware that the license to collect rent from tenants in the Property had expired and that, under Article 13, § 5-4 of the Baltimore City Code, they were prohibited from "accept[ing], retain[ing], or [seek]ing to collect any rental payment or other compensation" for the rental of the units in the Property.

15.     At a minimum, all Defendants were aware of the licensing issue and its consequences by February 4, 2020, when a judge for the Maryland District Court sitting in Baltimore City explicitly informed Defendants that because they were not licensed, they were not entitled to collect or retain any rent from their tenants.

16.     Nevertheless, Defendants did not inform the tenants in the Property that the Property was no longer licensed and that rent could not be collected.  Indeed, Defendants aggressively continued to pursue rent from the tenants of the Property during the entire period that the Property was unlicensed.

17.     Specifically, Defendant Law Office, in a letter authored and signed by Defendant Maher dated March 25, 2020 that was provided to every tenant of the Property, falsely claimed that "<u>ALL RENT AND ANY OTHER MONIES DUE UNDER YOUR LEASE ARE PAYABLE AS USUAL ON THE DUE DATE</u>" (emphasis in original).

18.     Defendants also aggressively pursued collections actions against tenants who fell behind on their rental payments during the period of time where the Property was unlicensed.

19.     Defendants E.T.G. and Roizman continued to collect rent from the tenants of the Property during the entire period that the Property was unlicensed, never disclosing to their tenants that the Property was unlicensed or that the Baltimore City code prohibited Defendants from collecting or retaining that rent.

20.     In addition to the efforts of Defendants Law Office and Maher, Defendants E.T.G. and Roizman made their own aggressive collections efforts with regard to any tenants who did not fully pay the illegal rent.   Defendants E.T.G. and Roizman consistently left notes for tenants who fell behind on their payments asking for immediate payment or a lawsuit would be filed.

21.     Many of these aggressive attempts to collect illegal rent occurred during state of emergency in Maryland caused by the Covid-19 pandemic, causing further and unnecessary stress during an uncertain and stressful time for the tenants in Defendants' pursuit of illegal rent.

22.     Further, throughout the time that Defendants were intentionally collecting illegal rent, the Property itself remained in such a state of disrepair that it could not meet the health and safety requirements necessary to obtain a new license.  The elevators constantly broke down, the water pressure and plumbing problems persisted, and numerous problems with individual units went unaddressed.  Despite having an inspection performed in February of 2020, the Property had so many unresolved code violations that

it was not granted the license to collect rent until July 15, 2020, leaving it unlicensed for a full 11 months.

23.     Defendants have not returned any of the rent collected from tenants during the period that the Property was unlicensed, and continue to pursue any unpaid rent from tenants during that period.

24.     Moreover, Defendants E.T.G. and Roizman continued to advertise available units in the Property while the Property was unlicensed, and entered into new leases or renewed leases with their existing tenants during the period that the Property was unlicensed.  Defendants are also aggressively pursuing rent allegedly due under leases that were entered into or renewed during that period, despite the fact that Article 13, § 5-4 of the Baltimore City Code prohibits the collection of rent unless a license existed at both the time of offering to provide occupancy and the time that the occupancy is actually provided.

### Facts Specific to Named Plaintiff's Experience

25.     Named Plaintiff moved into the PH7 unit of the Property on April 1, 2019.

26.     Like many of the other tenants in the Property, she was frustrated by the state of disrepair but continued to do her best to pay rent.

27.     Named Plaintiff was initially unaware that the Property became unlicensed on August 15, 2019, and continued to make her rent payments for August and September of 2019.

28.     However, on October, 3, 2019, while attempting to leave her apartment to attend a job interview for a promising position, the elevator in the Property malfunctioned while Plaintiff was riding it down, trapping her until the fire department arrived to get her

out of the elevator.  As a result, she missed her job interview.  This was the second time in her short time living in the Property that she had been trapped in the elevator.

29.     Although Named Plaintiff asked for a rent concession as a result of this ordeal, Defendants E.T.G. and Roizman refused, and Named Plaintiff ended up falling behind on rent payments.

30.     In November, 2019, Defendants E.T.G. and Roizman, through Defendant Law Office and at Defendant Maher's direction, sued Named Plaintiff in a failure to pay rent action filed in the District Court of Maryland sitting in Baltimore City, case no. 2019014500522802 (the "First Failure to Pay Rent Case").  The First Failure to Pay Rent Case sought to have Named Plaintiff evicted if she did not pay $772.54 in alleged rent due for October and November of 2019.   Named Plaintiff was unable to make the December 9, 2019 trial date in the First Failure to Pay Rent Case, and a default judgment was entered against her, with a right of redemption that would allow her to remain in her apartment if she paid any time before any eviction.

31.     In the meantime, Named Plaintiff discovered that the Property was no longer licensed and ceased all rent payments.  On January 8, 2020, Defendants E.T.G. and Roizman, through Defendant Law Office and at Defendant Maher's direction, filed a new failure to pay rent case against Named Plaintiff in the District Court of Maryland sitting in Baltimore City, case no. 2020014300301171 (the "Second Failure to Pay Rent Case") seeking an eviction if Named Plaintiff did not pay $1,680, representing rent for December 2019 and January 2020.

32.     Named Plaintiff was able to attend the February 4, 2020 trial in the Second Failure to Pay Rent Case.  Upon learning that the Property was unlicensed, the judge in the

Second Failure to Pay Rent Case ruled against Defendants, informing them that because the Property was unlicensed, they were prohibited from attempting to collect rent. Further, the judge informed Defendants that Named Plaintiff's rent ledger should be corrected to reflect that she did not owe any rent for period where the Property was unlicensed.

33.     Despite that outcome, and with knowledge that a judge had ruled against them regarding the licensing issue, Defendants moved forward to try to evict Named Plaintiff under the default judgment that they obtained in the First Failure to Pay Rent Case. Defendants obtained a warrant of restitution directing the Baltimore City Sheriff's Office to evict Named Plaintiff on February 18, 2020. To avoid eviction, Named Plaintiff paid $800 to cover the $772.54 that representing rent for October and portions of November, 2019, while the Property was unlicensed, right before the sheriff would have otherwise evicted her at Defendants' direction.

34.     Although Defendants stopped filing failure to pay rent actions against Named Plaintiff after the judge ruled against them in the Second Failure to Pay Rent Case, Named Plaintiff did receive the March 25, 2020 Letter from Defendant Law Office, authored and signed by Defendant Maher, that falsely claimed that "ALL RENT AND ANY OTHER MONIES DUE UNDER YOUR LEASE ARE PAYABLE AS USUAL ON THE DUE DATE."

35.     Moreover, Defendants E.T.G. and Roizman made numerous additional attempts to collect rent from Named Plaintiff for the period of time where the Property was unlicensed, including for the months that a judge had explicitly ruled that they could not collect.

36.     For example, in a note dated June 13, 2020, Defendants E.T.G. and Roizman wrote to Named Plaintiff:

> Your rent is currently past due!!!!! You must contact the rental office immediately!!!  Your payments need to be in the office before 9am on Wednesday, July 15, 2020.
>
> You currently owe a balance of $5,605.75 as a result of your missed or partial rent payments.
>
> The Baltimore City Courts are reopening next week.  Failure to make your complete rental payment has resulted in your household being sued for the delinquent amount.  As a result you will be responsible for the legal fee and writ fee (if applicable) as well.

There is no indication that any lawsuit was subsequently filed, and the entirety of the alleged debt is for rent incurred during a period of time where Defendants E.T.G. and Roizman were prohibited from collecting rent.

37.    Named Plaintiff resumed paying rent once she learned that the Property became licensed on July 15, 2020, but Defendants E.T.G. and Roizman have made it clear that they intend to continue to pursue her for rent during the time that the Property was unlicensed.  Defendants E.T.G. and Roizman sent a letter as recently as August 12, 2020, claiming that she owed several thousand dollars for rent during the time that the Property was unlicensed and stating "This balance needs to be presented to the Management Office by the close of business TOMORROW."

## CLASS ACTION ALLEGATIONS

38.    Named Plaintiff brings this action on behalf of a Class which consists of:

All tenants of 2601 Madison Ave, Baltimore, MD 21217 who rented an apartment or unit between August 15, 2019 and July 15, 2020 and/or who entered into or renewed a lease for an apartment or unit between August 15, 2019 and July 15, 2020.

39.    The Class, as defined above, is identifiable.  The Named Plaintiff is a member of the Class.

40.     The Class is so numerous that joinder of all members is impracticable, with approximately 146 units in the Property.

41.     There are questions of law and fact which are not only common to the Class, but which predominate over any questions affecting only individual class members.  The common and predominating questions include, but are not limited to:

    a.   Whether the Property was licensed during the period between August 15, 2019 and July 15, 2020.

    b.   Whether Defendant Law Office and Defendant Maher employed unfair and unconscionable means to collect an alleged debt by falsely claiming to residents that their rent was still due.

    c.   Whether Defendant Law Office and Defendant Maher made false and misleading representations about the legality and enforceability of the rent.

    d.   Whether Defendants collected rent payments during a time where the Property was unlicensed.

    e.   Whether Defendants collected rent payments made pursuant to leases that were entered into or renewed during the period that the Property was unlicensed.

    f.   Whether the actions of Defendant Law Office and Defendant Maher constitute violations of the Fair Debt Collection Practices Act.

    g.   Whether the Defendants claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist in their dealings with Named Plaintiff and Class Members.

    h.   Whether Defendants E.T.G. and Roizman engaged in an unfair or deceptive practice under the CPA in their dealings with Named Plaintiff and Class Members.

    i.   Whether a declaratory judgment is proper to prevent the Defendants from claiming that rent is still owed to them by the Class Members for the period of time where the Property was unlicensed or arising from leases that were entered into or renewed during the time that the Property was unlicensed.

    j.   Whether Defendants E.T.G. and Roizman were unjustly enriched by any amounts they collected from Named Plaintiff and the Class Members for rent or late fees for the period of time that the Property was unlicensed or pursuant to leases entered into or renewed during the time that the Property was unlicensed.

    k.   Whether Named Plaintiff and the Class may recover damages.

42.   The claims of Named Plaintiff are typical of the claims of the respective members of the Class within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of similar facts constituting Defendants' wrongful conduct.  In particular, as a person who paid rent during the period that the Property was unlicensed, and who received the correspondence from Defendants Law Office and Maher, Named Plaintiff asserts claims that are typical of each Class member.  Named Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

43.     Named Plaintiff is an adequate representative of the Class within the meaning of Fed. R. Civ. P. 23(a)(4), and is prepared to represent the Class. Furthermore, Named Plaintiff has secured counsel experienced in class actions, who foresee little difficulty in the management of this case as a class action.

44.     Neither Named Plaintiff nor Plaintiffs' counsel has any interests that might cause them not to vigorously pursue this claim.

45.     The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants within the meaning of Fed. R. Civ. P. 23(b)(1)(A).

46.     The Defendants' actions are generally applicable to the respective Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

47.     Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Fed. R. Civ. P. 23(b)(3).

48.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## CAUSES OF ACTION

### Count I – Defendant Law Office and Defendant Maher
### Violation of the Fair Debt Collection Practices Act
15 U.S.C. 1692f

49.      Plaintiffs incorporate into this paragraph the foregoing paragraphs of the Complaint.

50.     Federal law strictly regulates the practice of collecting consumer debts and imposes harsh penalties for the violation of those requirements. *See* 15 U.S.C. §§ 1692-1692p.

51.     In 1977, Congress enacted the FDCPA to address illegal and improper practices by debt collectors such as the Defendant Law Office.   "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

52.     Congress enacted the FDCPA because it determined that: "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. §1692(a).

53.     To this end, the FDCPA forbids debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

54.     The Act also makes it illegal for debt collectors to use "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

55.     Any debt collector that violates the FDCPA is liable for actual damages, plus statutory damages, plus litigation costs and attorney's fees. 15 U.S.C. § 1692k.

56.     Each of Defendant Law Office and Defendant Maher is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

14

57.     The attempt to collect rent for an unlicensed property in Baltimore City is unfair or unconscionable within the meaning of 15 U.S.C. 1692f.

58.     When attempting to collect rent for an unlicensed property in Baltimore City, Defendants Law Office and Maher also made false representations of the character, amount, or legal status of any debt, in violation of 15 U.S.C. 1692e(2)(A).

59.     The March 25, 2020 Letter from Defendant Law Office, authored and signed by Defendant Maher, that falsely claimed that "<u>ALL RENT AND ANY OTHER MONIES DUE UNDER YOUR LEASE ARE PAYABLE AS USUAL ON THE DUE DATE</u>" was a false, deceptive, or misleading representation made in connection with the collection of an alleged debt.

WHEREFORE, Plaintiff demands, on behalf of herself and the proposed Class, that the Court:

A.     Award Named Plaintiff and the Class actual damages as provided for in the FDCPA, 15 U.S.C. §1692k(a)(1), in an amount equal to all amounts paid by Named Plaintiff and Class members to Defendant Law Office and Defendant Maher for rent during the period that the Property was unlicensed or pursuant to a lease entered into or renewed during the period the Property was unlicensed;

B.     Award Plaintiffs statutory damages as provided for in the FDCPA, 15 U.S.C. §192k(a)(2);

C.     Certify this case as a Plaintiff Class action pursuant to Rule 23(b)(1), (2) and/or (3) of the *Federal Rules of Civil Procedure*;

D.     Award pre-judgment interest;

E.     Award Plaintiffs reasonable costs and attorney's fees; and

F.     Award Plaintiffs such other and further relief as the Court deems just and

proper.

## Count II
### Maryland Declaratory Judgment Act - Defendants E.T.G. and Roizman
Md. Code Ann., Cts. & Jud. Proc., § 3-409

60.     Plaintiffs incorporate into this paragraph the foregoing paragraphs of the Complaint.

61.     An actual controversy exists between the Class (including Named Plaintiff), and Defendants E.T.G. and Roizman.

62.     Antagonistic claims are present between the Class (including Named Plaintiff) and Defendants E.T.G. and Roizman which indicate imminent and inevitable litigation.

63.     Named Plaintiff and the Class assert that Defendants E.T.G. and Roizman are not permitted to collect or retain rent for the period of time that the Property was unlicensed or pursuant to a lease entered into or renewed during the period the Property was unlicensed.

64.     A declaratory judgment that establishes that Named Plaintiff and the Class do not owe any rent for the period of time that the Property was unlicensed or pursuant to a lease entered into or renewed during the period the Property was unlicensed will alleviate all uncertainty in this proceeding.

WHEREFORE, Named Plaintiff demands, on behalf of herself and the proposed Class, that the Court:

A.     Issue a declaratory judgment declaring the Property was unlicensed to rent from August 15, 2019 until July 15, 2020, and accordingly Defendants E.T.G. and Roizman are not entitled to collect or retain any rent for that period or pursuant to a lease entered

into or renewed during that period.

B.      Award Plaintiffs such other and further relief as the Court deems just and proper.

## Count III
### Violation of the Maryland Consumer Debt Collection Act - Defendants E.T.G. and Roizman
Md. Code Ann., Comm. § 14-201 *et seq.*

65.     Plaintiffs incorporate into this paragraph the foregoing paragraphs of the Complaint.

66.     Under the MCDCA, "In collecting or attempting to collect an alleged debt a collector may not: Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Comm. § 14-202(8).

67.     A collector who violates the MCDCA is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury. Md. Code Ann., Comm. § 14-203.

68.     Defendants E.T.G. and Roizman are debt "collectors" as defined in Md. Code Ann., Comm. § 14-201(b).

69.     The alleged rent arises from "consumer transactions" as defined in Md. Code Ann., Comm. § 14-201(c).

70.     As sophisticated owners of large apartment buildings, Defendants E.T.G. and Roizman are aware that under Article 13, § 5-4 of the Baltimore City Code, they may not collect or retain rent for the Property during the period it was unlicensed or pursuant to a lease entered into or renewed during the period the Property was unlicensed.

71.     Accordingly, by seeking to collect, collecting, and retaining rent for the period of time where the Property was unlicensed, or pursuant to a lease that was entered into or

renewed during that period, in violation of Article 13, § 5-4 of the Baltimore City Code, Defendants E.T.G. and Roizman are claiming and attempting to enforce a right with knowledge that it does not exist.

72.     Defendants E.T.G. and Roizman are prohibited from retaining or collecting any monies paid by Named Plaintiff and Class Members for rent during the period that the Property was unlicensed or pursuant to a lease entered into or renewed during the period the Property was unlicensed, and any such payments constitute actual damages and must be repaid to Plaintiffs by Defendants E.T.G. and Roizman pursuant to the MCDCA.

WHEREFORE, Named Plaintiff demands, on behalf of herself and the proposed Class, that the Court:

A.     Award Named Plaintiff and the Class actual damages as provided for in Md. Code Ann., Commercial Law, § 14-203, in an amount equal to all amounts paid by Named Plaintiff and the Class for rent during the period where the Property was unlicensed, or paid pursuant to a lease that was entered into or renewed during the time that the Property was unlicensed;

B.     Certify this case as a Plaintiff Class action pursuant to Rule 23(b)(1), (2) and/or (3) of the *Federal Rules of Civil Procedure*;

C.     Award pre-judgment interest;

D.     Award Plaintiffs costs; and

E.     Award Plaintiffs such other and further relief as the Court deems just and proper.

<u>Count IV</u>
**Violation of the Maryland Consumer Protection Act - Defendants E.T.G. and Roizman**
Md. Code Ann., Comm. §13-101 *et seq.*

73.     Plaintiffs incorporate into this paragraph the foregoing paragraphs of the

Complaint.

74.     The CPA, Md. Code, Comm., §13-101 *et seq.*, was originally enacted in 1973

because the legislature found that existing laws were "inadequate, poorly coordinated and

not widely known or adequately enforced," § 13–102(a)(2). The General Assembly enacted

the CPA as a comprehensive consumer protection act to provide protection against unfair

or deceptive practices in consumer transactions. § 13–102(b). The intention of the

Legislature was to set "minimum statewide standards for the protection of consumers." §

13–102(b)(1); see § 13–103(a). To realize this end, the General Assembly sought to

implement strong protective and preventive measures to assist the public in obtaining

relief from unlawful consumer practices and to maintain the health and welfare of the

citizens of the State. § 13–102(b)(3).

75.     To this end, the CPA forbids "any unfair or deceptive trade practice" in "[t]he

offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or

consumer services" § 13-303 (2).

76.     "Unfair or deceptive trade practices include ... False, falsely disparaging, or

misleading oral or written statement, visual description, or other representation of any

kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

[and] Failure to state a material fact if the failure deceives or tends to deceive." Md. Code,

Comm. § 13-301 (1), (3). "Unfair or deceptive trade practices" also includes any violation of

the MCDCA. Md. Code, Comm. § 13-301 (14)(iii).

77.     The collection of rent in violation of Article 13, § 5-4 of the Baltimore City Code by Defendants E.T.G. and Roizman for periods of time where the Property was unlicensed or pursuant to leases that were entered into or renewed during the time that the Property was unlicensed constitutes an unfair or deceptive trade practice, particularly where the Property continued to have numerous housing code violations while it was unlicensed.

78.     Accordingly, Defendants E.T.G. and Roizman are prohibited from retaining or collecting any monies paid by Named Plaintiff and Class Members for rent during the period that the Property was unlicensed, or pursuant to leases entered into or renewed during the period that the Property was unlicensed, and any such payments constitute actual damages and must be repaid to Plaintiffs by Defendants E.T.G. and Roizman pursuant to the CPA.

WHEREFORE, Named Plaintiff demands, on behalf of herself and the proposed Class, that the Court:

A.     Award Named Plaintiff and the Class actual damages as provided for in Md. Code Ann., Commercial Law, § 13-408, in an amount equal to all amounts paid by Named Plaintiff and the Class for rent during the period where the Property was unlicensed or pursuant to leases entered into or renewed during the period that the Property was unlicensed;

B.     Certify this case as a Plaintiff Class action pursuant to Rule 23(b)(1), (2) and/or (3) of the *Federal Rules of Civil Procedure*;

C.     Award pre-judgment interest;

D.     Award Plaintiffs reasonable costs and attorney's fees; and

20

E.      Award Plaintiffs such other and further relief as the Court deems just and proper.

## Count V
### Money Had and Received - Defendants E.T.G. and Roizman

79.     Plaintiffs incorporate into this paragraph the foregoing paragraphs of the Complaint.

80.     As set forth above, Defendants E.T.G. and Roizman assessed and collected payments for rent during a time where they were legally prohibited from collecting or retaining rent because the Property was unlicensed or pursuant to leases that were entered into or renewed while the Property was unlicensed.

81.     Defendants E.T.G. and Roizman had, and have, knowledge that the Property was unlicensed during the period from August 15, 2019 to July 15, 2020.

82.     By collecting and retaining rent for those periods and pursuant to leases that were entered into or renewed during those periods, Defendants E.T.G. and Roizman have come into the possession of money in the form of payments that they had, and have no right to.

83.     It would be inequitable for Defendants E.T.G. and Roizman to retain any such monies that they had no legal right to.

84.     As a result, Named Plaintiff and Class members suffered damages.

WHEREFORE, Plaintiffs demand, on behalf of themselves and the proposed class, that the Court:

A.      Award Named Plaintiff and the Class actual damages in an amount equal to all amounts paid by Named Plaintiff and Class members for rent for the period

that the Property was unlicensed or pursuant to leases that were entered into or renewed during the time that the Property was unlicensed;

      B.     Certify this case as a Plaintiff Class action pursuant to Rule 23(b)(1), (2) and/or (3) of the *Federal Rules of Civil Procedure*;

      C.     Award pre-judgment interest;

      D.     Award Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Joseph Mack
Joseph Mack
The Law Offices of Joseph S. Mack
PO Box 65066
Baltimore, MD 21209
Tel.    (443) 423-0464
joseph@macklawonline.com

/s/ Ingmar Goldson
Ingmar Goldson
The Goldson Law Office
1734 Elton Road, Suite 210
Silver Spring, MD 20903
Tel.    (240) 780-8829
 igoldson@goldsonlawoffice.com

***Attorneys for Plaintiff***

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all legal claims and disputed facts asserted herein.

 /s/Joseph Mack
Joseph Mack